UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION - FLINT

IN RE:

BILLIE JEAN JAMISON,                 Case No. 07-33494
                                              Chapter 7
      Debtor.                              Hon. Daniel S. Opperman
_____/

ESTATE OF WAYNE WILSON,

      Plaintiff,

v.                                                                   Adv. Pro. No. 08-3001

BILLIE JEAN JAMISON,

      Defendant.
_____/

## OPINION DENYING
## PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

### I. Introduction

Billie Jean Jamison is the Debtor in this Chapter 7 case and the Defendant in this adversary proceeding. The Plaintiff is the estate of the Debtor's former spouse, Wayne Wilson. After the Debtor filed her bankruptcy case, the Plaintiff commenced this adversary proceeding seeking a determination of the non-dischargeability of the debt owed to it by the Debtor and also the denial of the Debtor's discharge. This is the second time the Plaintiff has moved for partial summary judgment with respect to the non-dischargeability of its debt under several subsections of 11 U.S.C. § 523(a). The motion before the Court does not involve any of the allegations pled in the Plaintiff's Complaint based on 11 U.S.C. § 727. For the reasons set forth in this opinion, the Court denies Plaintiff's motion.

## II. Facts

These are the undisputed facts. Debtor is the former spouse of Mr. Wayne Wilson. Mr. Wilson worked for General Motors ("GM"). He was a participant in the GM Life and Disability program for hourly employees. On August 26, 1971, prior to the their divorce, Mr. Wilson completed a "Designation of beneficiary form" naming the Debtor as the primary beneficiary of the benefits under the GM Life and Disability program. The Debtor and Mr. Wilson were divorced on December 23, 1985. Their Judgment of Divorce contained the following provision relevant to the issues before the Court:

### Insurance

> IT IS FURTHER ORDERED AND ADJUDGED that the [Debtor] shall hereafter have no further interest as beneficiary or otherwise in and to any life insurance policies, endowment or annuity contracts standing in the name of the insuring the life of the [Mr. Wilson]; and [that Mr. Wilson] shall hereafter have no further interest as beneficiary or otherwise in and to any life insurance policies, endowment or annuity contracts standing in the name of insuring the life of the [Debtor].

(Plf.'s Mot., Ex. A (Dkt. #29).)

Ten years later, Mr. Wilson married Alicia Wilson. Despite his divorce from the Debtor and his later marriage, Mr. Wilson failed to update the "Designation of beneficiary form" to remove Debtor as the primary beneficiary of the GM life insurance and disability benefits. On November 9, 2006, Mr. Wilson passed away. Mrs. Wilson submitted a claim for the GM life insurance benefits to the Metropolitan Life Insurance Company ("Met Life"), the plan administrator and fiduciary of the GM Life and Disability program.

On January 12, 2007, Met Life denied Mrs. Wilson's claim because she was "not

2

the primary designated beneficiary." (Plf.'s Mot., Ex. B (Dkt. #29).) In its letter to Mrs. Wilson, Met Life explained that "the General Motors Life and Disability program for Hourly employees" was "an employee welfare benefit plan . . . governed by federal law, specifically the Employee Retirement Income Security Act of 1974, as amended ('ERISA')." (*Id.*) Met Life further explained that "the plan documents control the distribution of benefits under an ERISA-regulated plan" and that the benefits were "payable to the latest beneficiary designation on file, (i.e., the August 26, 1971 "Designation of beneficiary form") pursuant to a controlling decision issued by the Sixth Circuit Court of Appeals. (*Id.*)

After being named as the personal representative of the estate of Wayne Wilson, Mrs. Wilson moved to enforce the "Insurance" clause of the Divorce Judgment against the Debtor in the Circuit Court for Genesee County. On March 19, 2007, Honorable Robert E. Weiss entered an order ("Circuit Court Order") allowing the Plaintiff to intervene in the 1985 divorce action and ordered the Debtor to:

> immediately upon receipt, pay the entire life insurance benefit of Wayne Wilson, Deceased, to the Estate of Wayne Wilson, B-07-180423DE and there is to be no distribution of the proceeds until further order of the Probate Court.

(Plf.'s Mot., Ex. D (Dkt. #29).)

On April 9, 2007, Met Life transferred $17,138.23 (the "Life Insurance Proceeds") to an account held in the Debtor's name. (Plf.'s Mot., Ex. F (Dkt. 29).) Beginning on April 17, 2007 to April 30, 2007, Debtor wrote seven checks against this account totaling $16,909.51 for household goods and furnishings, groceries, and cash. (*Id.*) On May 4, 2007 this account was automatically closed out with an ending balance of $246.28, which included interest earned of $17.56. (*Id.*)

3

Due to the Debtor's failure to comply with the Circuit Court Order, Plaintiff then sought relief from the Genesee County Probate Court. On June 21, 2007 Honorable Jennie E. Barkey entered an "Order Compelling Billie Jean Jamison (f/k/a Billie Jean Wilson) to pay proceeds from the Decedent's General Motors/Metropolitan Life Insurance Policy to the Estate of Wayne Wilson, Sr., Deceased," ("Order to Compel") which stated in part:

> IT IS HEREBY ORDERED that Billie Jean Jamison (f/k/a Billie Jean Wilson) is to pay the entire General Motors provided Life Insurance benefit paid to her by the Metropolitan Life Insurance Company to the Estate of Wayne Wilson Sr., Deceased, by delivering a certified or cashier's check to the UAW-GM Legal Services Plan, attention Curt Ollikainen, located at 432 N. Saginaw Street, Suite 504, Flint, Michigan 48502 on or before Five (5:00) p.m. on Friday, June 29, 2007.
>
> IT IS FURTHER ORDERED that if Billie Jean Jamison . . . fails to pay the Decedent's life insurance benefit to the Estate of Wayne Wilson, Sr., Deceased on or before Five (5:00) p.m. on Friday, June 29, 2007, an Order to Show Cause will be issued as to why Billie Jean Jamison . . . should not be held in contempt of Court.

(Plf.'s Mot., Ex. I (Dkt. #29).) Debtor did not comply with the Order to Compel. Some time after June 29, 2007, Plaintiff sought and obtained additional relief from the Genesee County Probate Court.[1]

On October 11, 2007, Debtor filed a chapter 7 bankruptcy petition. (Case No. 07-33494). On November 8, 2007, the Debtor's first meeting of creditors took place. During this meeting, the Debtor admitted that she received the Life Insurance Proceeds

---

[1] In support of her prior summary judgment motion, the Plaintiff relied on an "Order of Judgment and Repayment Order" entered by Honorable Jennie E. Barkey on October 25, 2007, which was subsequent to the filing date of the Debtor's petition. This "Order of Judgment" is not part of the current record and was not considered by the Court in its analysis of the Plaintiff's current summary judgment motion.

4

from the GM Life and Disability program in April 2007. (Plf.'s Mot., Ex. G, 341 Hearing Tr. ("341 Hr'g Tr.") at 5.) The Debtor also admitted that she wrote checks against the Life Insurance Proceeds to purchase various household goods and furnishings, groceries, and for cash. (Ex. G, 341 Hr'g Tr. at 5-6.) When questioned by the Trustee, the Debtor was unable to provide any details about the specific amount of the life insurance proceeds involved and did not have copies of the documents she received from Met Life. (Ex. G, 341 Hr'g Tr. at 5-10.) At the Trustee's direction, the meeting was continued to Thursday, December 13, 2007 at 3:00 p.m.

During the continued meeting of creditors, the Debtor admitted that she received a little over $17,000 from Met Life. (Plf.'s Mot., Ex. E, Con't. 341 Hearing Tr. ("Con't. 341 Hr'g Tr.") at 5.) She also testified about how she spent the proceeds on household furniture and furnishings, utilities and other bills. (Ex. E, Con't. 341 Hr'g Tr. at 5-8.) When questioned by the Trustee, the Debtor acknowledged that she knew about the court order that required her to turn over the Life Insurance Proceeds to someone else. (Ex. E, Con't. 341 Hr'g Tr. at 16-17.) Despite this knowledge, the Debtor testified that she took the Life Insurance Proceeds because "the Lord told [her] to." (Ex. E, Con't. 341 Hr'g Tr. at 17.) Debtor explained to the Trustee that she

> was told by someone else to do so, based upon the fact that Wayne Wilson left the money to me. He wanted me to have it. And I stated that in a letter, while he was alive. We had six children together. Everybody else and drugs got the money that should have come to me and to our children. This is what I really feel[.]

(*Id.*) When the Trustee asked the Debtor whether she "willfully violated that court's order", Debtor responded "Yes, based upon what my husband wanted." (*Id.*)

At another point during the Debtor's examination, the Debtor explained her

5

position by referring to the Anna Nicole Smith case. (Ex. E, Con't. 341 Hr'g Tr. at 17-18.) As a result, the following exchange occurred between the Trustee and the Debtor:

> Debtor: Okay. What he wanted was honored. The state did not violate what he wanted. And so that's what – my question is this. This man knew exactly what he was doing. He was a dying man. He left the money to me. To me. No court in the law should ever go above the free will of an individual.
>
> Trustee: Okay. That's certainly your opinion. I understand it. I just wanted to make sure I understood the facts and the fact that you willfully violated the court's order.
>
> Debtor: Yeah. But the Constitution gives all of us certain rights.
>
> Trustee: Not to violate court orders it doesn't.
>
> Debtor: Well, when it supersedes the – the desire of an individual, that person's –
>
> Trustee: I get orders all the time from the judge that I don't like, but I don't violate them.
>
> Debtor: Yeah, but that person –
>
> Trustee: Should I? Do I have a right to because of Anna Nicole Smith?
>
> Debtor: What my ex-husband wanted should supersede the law of the land.

(Ex. E, Con't. 341 Hr'g Tr. at 18.)

In addition, the Debtor testified that she wrote Met Life to tell "them what was going on." She admitted that she told Met Life

> that if they did not give the money to me that Wayne Wilson, Sr., wanted me to have, I was going to go public and I am prepared to do that, with the fact that this man knew what he was doing when he did that. And now the court systems wants to violate his wishes, a dying man, which is wrong.

(Ex. E, Con't. 341 Hr'g Tr. at 22-23.)

On January 4, 2008, Plaintiff commenced this adversary proceeding against the

6

Debtor. The Complaint contains three counts. Count I is entitled "Conversion - Exempting from Discharge Under" 11 U.S.C. §§ 523(a)(2) and (a)(4). Count II is entitled "Fraud - Exemption from Discharge Under" 11 U.S.C. §§ 523(a)(2) and (a)(4). Count III, unlike Counts I and II, addresses the denial of the Debtor's discharge under 11 U.S.C. §§ 727(a)(2)(A), (a)(3), and (a)(4).

On June 19, 2008, Plaintiff timely filed its motion and brief in support of partial summary judgment as to only Count II of its Complaint. The Debtor opposed the Plaintiff's request. On August 13, 2008, the Court denied the Plaintiff's request for partial summary judgment. Following the Court's ruling, several status conferences have taken place while the parties investigated Met Life's actions. At a status conference held on May 13, 2009, the parties requested that the Court establish a briefing schedule for the filing of dispositive motions. On May 14, 2009, the Court issued a scheduling order.

On June 17, 2009, the Plaintiff timely filed its second partial summary judgment motion. In contrast to the Plaintiff's first summary judgment motion, the Plaintiff now moves for partial summary judgment under Counts I and II of its Complaint. On August 6, 2009, the Debtor filed her response opposing the Plaintiff's motion. A hearing was held on September 2, 2009. At the conclusion of the parties' arguments, the Court took this matter under advisement.

III. Jurisdiction

This Court has subject matter jurisdiction over this proceeding under 28 U.S.C. §§ 1334(b), 157(a), and 157(b)(1) and E. D. Mich. LR 83.50(a). This is a core

7

proceeding pursuant to 28 U.S.C. § 157(b)(2)(I).

IV. <u>Standard for Summary Judgment</u>

Fed. R. Civ. P. 56(c) for summary judgment is incorporated into Fed. R. Bankr. P. 7056. Summary judgment is only appropriate when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986). "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Id.* at 247-48. "[T]here is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Id.* at 249-50 (citations omitted).

"The initial burden is on the moving party to demonstrate that an essential element of the non-moving party's case is lacking." *Kalamazoo River Study Group v. Rockwell International Corp.*, 171 F.3d 1065, 1068 (6th Cir. 1999) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986)). "The burden then shifts to the non-moving party to come forward with specific facts, supported by evidence in the record, upon which a reasonable jury could return a verdict for the non-moving party." *Id.* (citing *Anderson*, 477 U.S. at 248). "The non-moving party, however, must provide more than mere allegations or denials . . . without giving any significant probative evidence to support" its position. *Berryman v. Rieger*, 150 F.3d 561, 566 (6th Cir. 1998) (citing *Anderson*, 447 U.S. at 256). "If after reviewing the record as a whole a rational

8

factfinder could not find for the nonmoving party, summary judgment is appropriate."
*Braithwaite v. Timken Co.*, 258 F.3d 488, 493 (6th Cir. 2001) (internal quotation marks and citations omitted).

V. Discussion

A.  *The Life Insurance Proceeds*

In their briefs, the parties' requested that the Court address two substantive issues pertaining to the Life Insurance Proceeds before ruling on the Plaintiff's summary judgment motion. The Court will separately consider each issue.

   1. *Met Life complied with its duty under ERISA when it distributed the Life Insurance Proceeds to the Debtor because she was the last designated beneficiary under the plan documents.*

The first legal issue involves a determination about Met Life's payment of the Life Insurance Proceeds to the proper recipient under federal law. During oral argument, however, both parties conceded that Met Life fulfilled its statutory duty under ERISA when it distributed the Life Insurance Proceeds to an account held in the Debtor's name because the Debtor was the last designated beneficiary based on the August 26, 1971 "Designation of beneficiary form" executed by Mr. Wilson. Counsel for the parties explained to the Court that Met Life's actions were governed by *Metropolitan Life Ins. Co., v. Pressley*, 82 F.3d 126 (6th Cir. 1996) and the more recent decision of the United States Supreme Court in *Kennedy v. Plan Administrator for DuPont Savings & Investment Plan*, - - - U.S. - - -, 129 S.Ct. 865 (2009). Under circumstances somewhat similar to those presented in this proceeding, the Supreme Court held in *Kennedy v. Plan Administrator for Du Pont* that a plan administrator of an ERISA plan has a

9

statutory duty to pay benefits to a beneficiary designated by a plan participant in conformity with the plan documents.  *Id.* at 875.  See also *Central States, SE & SW Areas Pension Fund v. Howell*, 227 F.3d 672, 677 (6th Cir. 2000) (recognizing that "the law in this Circuit is clear — the beneficiary card controls whom the plan administrator must pay").

As acknowledged by the parties, application of these cases to the circumstances in this proceeding indicates that Met Life fulfilled its statutory duty under ERISA when it properly distributed the Life Insurance Proceeds to an account held in the Debtor's name.  This conclusion resolves the federal law question.  The next legal issue the parties' requested that the Court address is whether, under Michigan law, the Debtor waived her right to keep the Life Insurance Proceeds based on the parties' Divorce Judgment.

2. *The Debtor Waived her Right to Retain the Life Insurance Proceeds.*

The Plaintiff contends that, under Michigan law, the Debtor waived her right to retain possession of the Life Insurance Proceeds based on the "Insurance" provision contained in the Divorce Judgment.  Plaintiff's counsel pointed out that this issue is controlled by *Sweebe v. Sweebe*, 712 N.W.2d 708, 710 (2006).  Like this case, *Sweebe*, involved a former spouse's retention of life insurance proceeds contrary to the terms of her divorce judgment.  The court in *Sweebe* held that the plaintiff was not entitled to keep the life insurance proceeds because she expressly waived her right to any entitlement to them as part of the parties' divorce settlement as provided by the terms of their divorce judgment.  The court explained that a valid waiver must be "explicit, voluntary, and made in good faith." *Sweebe*, 712 N.W.2d at 712.

10

Again, at oral argument, counsel for the Debtor, conceded that under Michigan law the Debtor had no legal basis to retain the Life Insurance Proceeds. In light of the Debtor's position on this substantive issue, the Court concludes that this issue of law is resolved. To recap, under federal law, MetLife was required to pay the Debtor the Life Insurance Proceeds. Yet, under Michigan law, the Debtor acknowledges that she waived her entitlement to receive the Life Insurance Proceeds under the terms of the parties' Divorce Judgment. These conclusions of law, however, do not resolve the pending motion before the Court. The Court must still consider the Plaintiffs' motion for summary judgment on each of its § 523(a) claims.

B.   *Non-Dischargeability of a Debt under 11 U.S.C. 523(a)*

Plaintiff moves for partial summary judgment on Counts I and II of her three count complaint against the Debtor. The Plaintiff asserts that there are no genuine issues of material fact under any of its actions premised on § 523(a)(2)(A), § 523(a)(4), or § 523(a)(6). Therefore, the Plaintiff contends that it is entitled to judgment as a matter of law. The Debtor disagrees.

   1.   *11 U.S.C. § 523(a)(2)(A)*

The Debtor argues that the Plaintiff's current summary judgment motion on its § 523(a)(2)(A) claim relies on the same grounds and supporting materials presented to and ruled upon by the Court on its previous summary judgment motion. As such, the Debtor contends that the Plaintiff's motion should be denied because material factual issues exist. The Court agrees. The Court concludes that Plaintiff's attempt to obtain another summary judgment ruling is unavailing under the law of the case doctrine,

11

which provides:

> that when a court decides upon an issue of rule of law, that decision should continue to govern the same issues in subsequent stages of he same case. The doctrine precludes a court from reconsideration of issues decided at an early stage of the litigation, either explicitly or by necessary inference from the disposition.

*Westside Mothers v. Olszewski*, 454 F.3d 532, 538 (6th Cir. 2006) (internal quotes and citations omitted). Three exceptional exceptions exist to the law of the case doctrine: "(1) where substantially different evidence is raised on subsequent trial; (2) where a subsequent contrary view of the law is decided by controlling authority; or (3) where a decision is clearly erroneous and would work manifest injustice." *Id.*

The Plaintiff has failed to establish that any of these exceptions exist in this matter to require the Court to reconsider its prior ruling. The Plaintiff's motion for summary judgment on its § 523(a)(2)(A) claim is denied.

2. *11 U.S.C. § 523(a)(4)*

    a. Defalcation of a fiduciary duty

The Plaintiff moves for summary judgment on its § 523(a)(4) claim. Plaintiff contends that there are no genuine issues of material fact and that it has established that the debt owed by the Debtor to it is one "for fraud or defalcation while acting in a fiduciary capacity" under § 523(a)(4). The Debtor disagrees.

The Sixth Circuit Court of Appeals in *In re Bucci*, 493 F.3d 635 (6th Cir. 2007), explained the meaning of the phrase "defalcation while acting in a fiduciary capacity" by quoting from several prior decisions.

> A debt is nondischargeable as a defalcation when the preponderance of the evidence establishes: "(1) a preexisting fiduciary relationship; (2)

12

breach of that fiduciary relationship; and (3) a resulting loss." *In re Blaszak,* 397 F.3d at 390.

The Sixth Circuit "construes the term 'fiduciary capacity' found in the defalcation provision of § 523(a)(4) more narrowly than the term is used in other circumstances." *In re Blaszak*, 397 F. 3d at 391. In *Carlisle Cashway, Inc. v Johnson* (*In re Johnson*), 691 F.2d 249, 251-52 (6th Cir.1982), and *In re Interstate Agency*, 760 F.2d at 125, we limited the application of the defalcation provision to express or technical trusts and refused to extend it to constructive or implied trusts imposed by operation of law as a matter of equity. The decisions in those cases relied on the Supreme Court's holding in *Davis v. Aetna Acceptance Co.*, 293 U.S. 328, 333, 55 S.Ct.151, 153, 79 L.Ed. 393 (1934) that the defalcation provision applies only to express or technical trusts. Again in *In re Garver*, we adopted a narrow definition of the defalcation provision and held that it does not apply to someone who merely fails to meet an obligation under a common law fiduciary relationship. *In re Garver*, 116 F.3d at 179. . . . Accordingly, the defalcation provision applies to "only those situations involving an express or technical trust relationship arising from placement of a specific res in the hands of the debtor." *In re Garver,* 116 F.3d at 180.

To establish the existence of an express or technical trust, a creditor must demonstrate: "(1) an intent to create a trust; (2) a trustee; (3) a trust res; and (4) a definite beneficiary." (citation omitted)

*In re Bucci*, 493 F.3d at 639-640.

The fundamental issue under Plaintiff's § 523(a)(4) claim is whether the Debtor breached fiduciary duties she owed to the Plaintiff due to the existence of an express or technical trust. There is nothing in the record before the Court to indicate that an express trust or a technical trust was created by the Circuit Court Order or the Order to Compel. A broad reading of these orders could lead to conclusion that a constructive trust was imposed over the Life Insurance Proceeds. Even if the Court were to interpret these orders as imposing a constructive trust, this type of a trust is insufficient under § 523(a)(4). The Court concludes that Plaintiff is not entitled to summary judgment on its § 523(a)(4) claim.

13

b. Embezzlement

For the first time, the Plaintiff moves for summary judgment under § 523(a)(4) based on grounds of embezzlement. The Debtor, however, did not receive fair notice of the Plaintiff's claim under § 523(a)(4). A review of the Plaintiff's Complaint indicates that the Plaintiff did not raise a cause of action under § 523(a)(4) based on an embezzlement theory of liability. On its face, the Complaint does not contain any factual allegations premised on embezzlement. The Court concludes that it is improper at this point to allow the Plaintiff to now raise a new cause of action. The Plaintiff's motion for summary judgment on an embezzlement theory under § 523(a)(4) is denied.

3. *11 U.S.C. § 523(a)(6)*

This is the first time Plaintiff has moved for summary judgment under § 523(a)(6) based on conversion. The Debtor's response to the Plaintiff's motion did not address this aspect of the Plaintiff's summary judgment motion. A review of the Plaintiff's Complaint indicates that while Count I is entitled "Conversion under § 523(a)(2)(A) or § 523(a)(4)," the allegations pled in Count I substantially plead a theory of liability based on conversion. Even though the Court construes the Plaintiff's Complaint to plead conversion, genuine issues of material fact exist to preclude this Court from granting the Plaintiff's summary judgment motion.

Section 523(a) states that a

> discharge under [§] 727 . . . does not discharge an individual debtor from any debt —
>
>> (6) for willful and malicious injury by the debtor to another entity or to the property of another entity[.]

14

Based on statute's plain language, the debt "must be for an injury that is both willful and malicious. The absence of one creates a dischargeable debt." *Markowitz v. Campbell*, (*In re Markowtiz*), 190 F.3d 455, 463 (6th Cir. 1999). Debts that arise from reckless or negligent acts are not encompassed within § 523(a)(6). *Kawaauhau v. Geiger*, 523 U.S. 57, 63, 118 S.Ct. 974, 978 (1998). Instead, debts that arise from those acts undertaken with the actual intent to cause injury fall squarely within § 523(a)(6). *Id*. As explained by the *Geiger* court:

> The word 'willful' in (a)(6) modifies the word 'injury,' indicating that nondischargeability takes a deliberate or intentional *injury*, not merely a deliberate or intentional *act* that leads to injury. Had Congress meant to exempt debts resulting from unintentionally inflicted injuries, it might have described instead 'willful acts that cause injury.' Or, Congress might have selected an additional word or words, i.e., 'reckless' or 'negligent' to modify 'injury.'

*Kawaauhau v. Geiger*, 523 U.S. at 62-3, 118 S.Ct. at 977 (emphasis in original). With citation to the Restatement (Second) of Torts, the *Geiger* court also explained that "the (a)(6) formulation triggers in the lawyer's mind the category 'intentional torts,' as distinguished from negligent or reckless torts. Intentional torts generally require that the actor intend 'the *consequences* of an act,' not simply 'the act itself.'" Id. (quoting Restatement (Second) of Torts § 8A, Comment a, p. 15 (1964)) (emphasis in original).

In *Markowitz v. Campbell* (*In re Campbell)*, 190 F.3d 455, (6th Cir. 1999), the Sixth Circuit Court of Appeals applied and expanded on the *Geiger* analysis of § 523(a)(6) to hold that "unless 'the actor desires to cause [the] consequences of his act, or . . . believes that the consequences are substantially certain to result,' . . . he has not committed a 'willful and malicious injury' as defined under § 523(a)(6)." 190 F.3d at 464 (quoting Restatement (Second) of Torts § 8A, at 15 (1964)).

15

In the context of § 523(a)(6), the term "malice" was defined long ago by the United States Supreme Court in *Tinker v. Colwell*, 193 U.S. 473, 24 S.Ct. 505 (1904) as meaning "a wrongful act, done intentionally, without just cause or excuse." 193 U.S. at 485-86 (interpreting analogous § 17(a)(2) of the former Bankruptcy Act) (internal quotation marks and citation omitted). Alternatively, "malicious" means "in conscious disregard of one's duties." *Monsanto Co., v. Trantham* (*In re Trantham*), 304 B.R. 298, 308 (6th Cir. B.A.P. 2004).

In reviewing the relevant allegations in Count I of the Plaintiffs' complaint, the focus of the allegations against the Debtor consist of her knowing, willing, and voluntary violation of the orders entered by the Circuit Court and Probate Court. Plaintiff further alleged that the Debtor unlawfully took, asserted dominance over the Life Insurance Proceeds, which rightfully belonged to it; that the Debtor converted the Life Insurance Proceeds to her own use, which resulted in damages to the Plaintiff. The focus of these allegations is on the deliberate or intentional acts engaged in by the Debtor. Noticeably absent from these claims are any allegations that the Debtor intentionally sought to harm or injure the Plaintiff or knew that the Plaintiff would be harmed as a result of the Debtor's actions and that she did so in conscious disregard of any duties without just cause or excuse.

As determined by the Court in its prior ruling on the Plaintiff's first motion for summary judgment, the primary issue involved in this adversary proceeding is the Debtor's intent. *Hoover v. Radabaugh*, 307 F.3d 460, 467 (6th Cir. 2002) (recognizing that summary judgment is particularly inappropriate when a party's intent is at issue). It is necessary then for the Court to observe, weigh and determine the credibility of the

Debtor. This is an issue of material fact that requires a trial. *Anderson v. Liberty Lobby*, 477 U.S. 242, 257 (1986). For this reason, the Court denies the Plaintiff's motion for summary judgment on its § 523(a)(6) claim.

VI. Conclusion

For the reasons explained in this Opinion, the Court concludes that the Plaintiff's motion for summary judgment is denied on all grounds.

**Signed on March 19, 2010**

                                     **/s/ Daniel S. Opperman**
                               **Daniel S. Opperman**
                               **United States Bankruptcy Judge**